IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


DOUGLAS D. TRUE                                                                PETITIONER


v.                                          NO. 5:18-cv-00189 BRW/PSH


WENDY KELLEY                                                               RESPONDENT


FINDINGS AND RECOMMENDATION

INSTRUCTIONS


      The following proposed Findings and Recommendation have been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

I. STATE COURT PROCEEDINGS. The record reflects that petitioner Douglas D. True ("True") was charged in an Arkansas state trial court with two counts of capital murder following the death of his pregnant girlfriend. He eventually pleaded guilty to both counts and was sentenced to concurrent terms of life imprisonment without parole. He did not appeal any aspect of his plea or sentence.

True thereafter filed a pro se petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1. The Arkansas Supreme Court summarized the claims in his petition as follows:

> … counsel failed to fully investigate and develop a theory of defense and instead pressured [True] to plead guilty to capital murder to avoid the imposition of the death penalty; … counsel failed to order a mental evaluation; and … [True's] guilty plea was involuntary in that, at the time the plea was entered, counsel did not inform [True] that the prosecutor had not yet given notice of intent to seek the death penalty. …

See True v. State, 2017 Ark. 323, 532 S.W.3d 70, 72 (2017). The state trial court appointed counsel and obtained an evaluation of True's mental state. See Docket Entry 8, Exhibit F. The results of the evaluation reflect that he understood the proceedings against him, had the capacity assist in his defense, did not manifest symptoms of a mental disease or defect, and did not lack the capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law. He was, though, diagnosed with an anti-social personality disorder and an alcohol-abuse disorder. The evaluation also contained a summary of the prosecution's account of the facts; the state Supreme Court recounted the summary as follows:

> … the victim was five to six months pregnant at the time of her death;
> … True called 911 and stated that "he had done something bad that he
> didn't remember;" … True admitted to investigators that he and the
> victim had an argument on the night of the murder that had escalated
> into a physical altercation but that he did not recall any other events that
> occurred; and … True told investigators that he was not aware that
> anyone else was in the residence on the night of the murders.

See Id., 532 S.W.3d at 72. The state trial court conducted an evidentiary hearing during

which True testified. The state Supreme Court summarized True's testimony as follows:

> True testified that due to intoxication, he had "blacked out" and had no
> memory of murdering his girlfriend. True admitted it was possible that he
> was the perpetrator[] but insisted that he had never harmed anyone when
> he had previously "blacked out" due to intoxication. True insisted that he
> pleaded guilty solely to avoid the death penalty. On cross-examination,
> True admitted that the evidence showed that his girlfriend had been
> stabbed eleven times and had been beaten about the face and body.

See Id. at 73. The state trial court denied True's petition for post-conviction relief. The

state Supreme Court summarized the state trial court's reasons for doing so as follows:

> … (1) trial counsel had reasonably investigated the facts and
> circumstances surrounding True's case; (2) that counsel's failure to make
> further investigation regarding True's mental-health history was not
> prejudicial; and (3) that it could not find that trial counsel was ineffective
> or that [True] was unwise for considering the possibility of a death
> sentence as an incentive for pleading guilty.

See Id. True appealed the denial of his petition. The state Supreme Court found no

reversible error and affirmed the denial of his petition.

II. FEDERAL COURT PLEADINGS. True then began the case at bar by filing a

petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. In the petition, he

advanced the following four claims for relief:

3

1) counsel was constitutionally inadequate because he failed to conduct a thorough pre-trial investigation and formulate a viable defense;

2) counsel was constitutionally inadequate because he failed to request a pre-trial mental evaluation and obtain a determination of True's mental competency;

3) counsel was constitutionally inadequate because he failed to discover and produce exculpatory evidence; and

4) True did not enter a knowing, voluntary, and intelligent plea of guilty because he was denied his Sixth Amendment right to effective assistance of counsel

Respondent Wendy Kelley ("Kelley") filed a response to True's petition. In the response, Kelley asked that the petition be dismissed. With respect to claims one, two, and four, Kelley maintained that the state Supreme Court reasonably adjudicated the claims in resolving True's petition for post-conviction relief, and the adjudication should be granted deference. With respect to claim three, Kelley maintained that the claim is procedurally barred from federal court review.

True filed a lengthy reply. In it, he maintained that the state Supreme Court's adjudication of his claims should not be accorded any deference for two reasons. First, the adjudication resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Alternatively, the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. With respect to Kelley's assertion of a procedural bar, True maintained that he could not have raised his third claim in state court because he did not have access to a copy of the case file and was therefore unaware of the claim.

III. TRUE'S FIRST CLAIM. True's first claim involves a challenge to his trial attorney's representation. True maintains that counsel failed to conduct a thorough pre-trial investigation and formulate a viable defense. For instance, True maintains that, inter alia, counsel failed to compare True's hand and foot prints to the prints recovered at the crime scene; failed to discover that True's DNA was not found on the alleged murder weapon; failed to document True's history of mental illness; failed to adequately investigate True's social background or interview his friends and associates; failed to locate and interview Zoe Moores, a/k/a "Bubbles," the last person to have spoken with True prior to the murders; and failed to adequately investigate True's educational background.

True's claim is governed by Strickland v. Washington, 466 U.S. 668 (1984), which requires a two-part inquiry. First, the petitioner must show that counsel's performance was deficient, i.e., the petitioner must show that counsel's representation fell below an objective standard of reasonableness. See Slocum v. Kelley, 854 F.3d 524 (8th Cir. 2017). Second, the petitioner must show prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Id. In the context of a guilty plea, the petitioner must show a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty but would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52 (1985). The likelihood of a different result must be substantial, not just conceivable, see Slocum v. Kelley, 854 F.3d at 532, and "there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy," see Amrine v. Bowersox, 238 F.3d 1023, 1030 (8th Cir. 2001).

True's claim is also governed by 28 U.S.C. 2254(d), which requires its own two-part inquiry. First, it requires an inquiry into whether the state Supreme Court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Second, 28 U.S.C. 2254(d) requires an inquiry into whether the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Taken together with Strickland v. Washington, 28 U.S.C. 2254(d) establishes a doubly deferential standard of review. See Williams v. Roper, 695 F.3d 825 (8th Cir. 2012).

Counsel testified during the evidentiary hearing about the investigative efforts he undertook in attempting to formulate a viable defense. See Docket Entry 8, Exhibit D at CM/ECF 94-118. The state Supreme Court summarized his testimony as follows:

> .... counsel testified that he had reviewed the evidence against True and spoke to True's family members; that [counsel] had begun gathering evidence of True's social history, which included obtaining school and military records for the purpose of developing grounds for mitigation; and that [counsel] had hired an investigator to interview and subpoena necessary witnesses for the defense. ...

True v. State, 532 S.W.3d at 73. True also testified and conceded that counsel did, in fact, undertake some investigative efforts. See Docket Entry 8, Exhibit D at CM/ECF 121, 126. The state trial court applied the Strickland v. Washington standard and rejected the claim, finding that counsel conducted an adequate investigation of the facts and of the factors in mitigation of True's sentence. On appeal, the state Supreme Court applied the same standard, noted counsel's testimony, and found that the state trial court's findings were not clearly erroneous.

6

The state Supreme Court's adjudication of True's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The state Supreme Court recognized clearly established federal law as announced in <u>Strickland v. Washington</u>, credited the findings of the state trial court, and found no basis for overturning the findings. The decision of the state Supreme Court, while not exhaustive, reasonably applied the law and is consistent with it. The decision is also consistent with the presumption that counsel's conduct fell within the wide range of professionally reasonable assistance and sound trial strategy. Consequently, the undersigned defers to the state Supreme Court's adjudication of the claim. <u>See</u> <u>Lemaster v. Kelley</u>, --- Fed.Appx. ---, 2018 WL 5877270 (8th Cir. 2018) (federal court defers to state court decision that claim lacks merit so long as fair-minded jurists could disagree on the correctness of decision).

True faults the state Supreme Court for applying a clearly erroneous standard of review in rejecting the claim, not the <u>Strickland v. Washington</u> standard required by the United States Supreme Court.[1] A fair reading of the state Supreme Court's decision reflects that the court did not apply a clearly erroneous standard of review in rejecting the claim. The state Supreme Court limited its application of the clearly erroneous standard of review to resolving the factual questions; the court did not apply the clearly erroneous standard of review in answering the ultimate question of whether counsel provided constitutionally inadequate representation.

---

[1]    In the state Supreme Court's decision, the court observed the following: "A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the totality of the evidence, is left with the definite and firm conviction that a mistake has been committed. <u>Polivka v. State</u>, 2010 Ark. 152, at 4, 362 S.W.3d 918, 923. Based on a review of the evidence and the findings of the trial court, there is no showing that the trial court clearly erred when it denied relief. ..." <u>See True v. State</u>, 532 S.W.3d at 72.

The state Supreme Court's adjudication of True's claim also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Counsel testified to the investigative efforts he undertook in attempting to formulate a viable defense, and True conceded during his testimony that counsel undertook some investigative efforts. The state Supreme Court, like the state trial court, credited counsel's testimony and found that counsel reviewed the evidence against True; spoke with True's family members; began gathering evidence of True's social history, which included obtaining school and military records for the purpose of developing grounds for mitigation; and hired an investigator to interview and subpoena witnesses. Having credited counsel's testimony, the state Supreme Court could reasonably find as it did.

IV. TRUE'S SECOND CLAIM. True's second claim involves a challenge to his trial attorney's representation.[2] True maintains that counsel erred by failing to request a pre-trial mental evaluation and obtain a determination of True's mental competency. In support of the claim, True maintains that he has a history of mental illness, primarily in the form of depression and anxiety. He maintains that he experiences "thoughts of death and suicide, high irritability and [an] inability to concentrate, racing thoughts, and auditory and visual hallucinations." See Docket Entry 1 at CM/ECF 20-21. It is True's contention that had counsel learned of True's history of mental illness, counsel would have known to consider a defense of mental disease or defect and would not have allowed True to plead guilty until completely exploring his history of mental illness.

---

[2]    True's claim is governed by <u>Strickland v. Washington</u>. Because the claim was considered and rejected by the state Supreme Court, the claim is also governed by 28 U.S.C. 2254(d), giving rise to a doubly deferential standard of review.

Counsel testified during the evidentiary hearing about his efforts to explore True's history of mental illness. See Docket Entry 8, Exhibit D at CM/ECF 94-118. Counsel was not sure whether he knew that True had been treated for depression and anxiety, and True did not disclose that he was experiencing hallucinations. Counsel believed he obtained all of True's medical records and did not request an evaluation of True's mental competency. After True pleaded guilty, though, counsel received other medical records. An evaluation of True's mental competency was subsequently performed, and the results were unremarkable. The state trial court applied the Strickland v. Washington standard and rejected the claim, finding the following:

> … [True] testified he advised counsel he suffered from anxiety and depression while in the military. Notably, he did not mention to his attorney he also suffered from visual and auditory hallucinations as he did when visiting with Dr. Lacey Matthews for an examination ordered by this Court in conjunction with the [post-conviction] petition. Perhaps that is because Dr. Matthews found these claims to be a result of [True's] "malingering" – a clinical term used in the Court's experience as a more polite way to say one was faking symptoms.

> Also of note, [counsel] had in fact requested, and later received, military records of [True]. At the time of [True's] guilty plea, counsel was of the belief he had received all of the available records, which contained no reference to the mental health matters relayed to [counsel] by [True]. It was only later that those records were received. The records were introduced at the hearing and indicate at various points that [True] suffered from "Major Depression Single Episode Moderate" and on three (3) occasions "Major Depression, Single Episode in Partial Remission.

> More importantly, subsequent to the filing of the [post-conviction] petition, [True] was subject to an evaluation to determine his criminal responsibility and fitness to proceed. The results were clearly stated in reports prepared by Dr. Matthews. [True], at the time of the offense, did not suffer from a mental disease or defect such as would effect his criminal responsibility. He was able to appreciate the criminality of his conduct and conform his conduct to the requirements of the law, and he was capable to forming the necessary mental state. Further, he was deemed competent to assist in his own defense.

<u>See</u> Docket Entry 8, Exhibit D at 72-73. On appeal, the state Supreme Court applied the <u>Strickland v. Washington</u> standard and found that True was not prejudiced by counsel's failure to more thoroughly explore True's history of mental illness. The state Supreme Court found that given the results of the mental evaluation, it was "unlikely … a more thorough investigation of True's mental-health history would have produced sufficient evidence supporting an affirmative defense or would have eliminated True's exposure to a possible death sentence." <u>See</u> <u>True v. State</u>, 532 S.W.3d at 74.

The state Supreme Court's adjudication of True's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The state Supreme Court recognized clearly established federal law as announced in <u>Strickland v. Washington</u> and found that True was not prejudiced by counsel's failure to more thoroughly explore True's history of mental illness. The decision of the state Supreme Court reasonably applied the law and is consistent with it. The decision is also consistent with the presumption that counsel's conduct fell within the wide range of professionally reasonable assistance and sound trial strategy. The undersigned thus defers to the state Supreme Court's adjudication of the claim.

The state Supreme Court's adjudication of True's claim also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The adjudication rests on the second part of the <u>Strickland v. Washington</u> standard, <u>i.e.</u>, whether True was prejudiced by counsel's failure to request a pre-trial mental evaluation and obtain a determination of True's mental competency. The state Supreme Court could find that True suffered no prejudice as there are facts supporting the finding, specifically, the results of the mental competency evaluation

performed less than two years after the date of the offenses.[3] Although he was diagnosed with an anti-social personality disorder and an alcohol-abuse disorder, the results of the evaluation were unremarkable. The state Supreme Court could find that given the results, it was "unlikely … a more thorough investigation of True's mental-health history would have produced sufficient evidence supporting an affirmative defense or would have eliminated True's exposure to a possible death sentence." The undersigned therefore defers to the state Supreme Court's adjudication of the claim.

V. TRUE'S THIRD CLAIM. True's third claim also involves a challenge to his trial attorney's representation. True maintains that counsel erred by failing to discover and produce exculpatory evidence. In support of the claim, True maintains the following:

> According to crime lab reports, the cast allegedly used as a weapon during the commission of the crime tested negative for the presence of True's DNA. Further, there is no record of … True's prints or DNA being found on the knife recovered by [the] authorities.
>
> … It was later discovered that the prints taken from … True were never tested against those recovered from the crime scene.
>
> Instead of reporting these details to [True] in order to give him the opportunity to make informed decisions regarding his defense, … counsel withheld this valuable information and proceeded to advise [True] to plead guilty, stating that it was "the best possible outcome."
>
> Trial counsel testified during the post-conviction hearing that he had reviewed the police report and crime lab reports pertaining to this case. If this is true, he knew or had reason to know of the presence of the exculpatory evidence as well [as] the fact that the print comparison had not been done.

See Docket Entry 1 at CM/ECF 22-23.

---

[3]    The date of the offenses was alleged to have been July 20, 2014. The date of True's guilty plea was December 17, 2014. The date of the mental competency examination was May 19, 2016.

Kelley maintains, and True concedes, that the claim was never presented to the state courts. Kelley maintains that the claim is therefore procedurally barred from federal court review. True disagrees. He maintains that he can show the requisite cause and prejudice, which will permit the claim to be considered by the federal courts.[4]

As cause, True maintains that he was "prevented by several government agencies from timely presenting this ground to the state courts due to their several denials of his requests for a copy of the discovery file in his case." See Docket Entry 1 at CM/ECF 24. True acknowledges that he was represented by counsel in the post-conviction proceeding and requested a copy of the case file from counsel, but the attorney refused True's request. It was not until True retained another attorney and obtained a copy of the case file that True learned of the "DNA reports." See Docket Entry 1 at CM/ECF 27. At approximately the same time, True learned that there was "no reference to the prints taken from … True in 2014 being processed for comparison to those recovered from the crime scene." See Docket Entry 1 at CM/ECF 27.

The undersigned accepts that True did not obtain a copy of the case file until after the conclusion of the post-conviction proceeding and only then learned of the claim. Do those facts establish the requisite cause and prejudice? Rather than answer that question, the undersigned will bypass the question and address the merits of the claim because it warrants no relief. See Stephens v. Norris, 83 F.3d 223 (8th Cir. 1996) (court may cut through potential procedural bar morass and address merits of claim).

---

[4]    Generally, the federal courts will not consider a claim if the petitioner failed to first present it to the state courts in accordance with the state's procedural rules. See Wainwright v. Sykes, 433 U.S. 72 (1977); O'Rourke v. Endell, 153 F.3d 560 (8th Cir. 1998). There are, though, exceptions to the rule. A claim can be considered if the petitioner can show cause for his procedural default and actual prejudice or, alternatively, show that the failure to consider the claim will result in a fundamental miscarriage of justice because he is actually innocent. See Wallace v. Lockhart, 12 F.3d 823 (8th Cir. 1994).

The record contains a copy of a police report, one portion of which is an affidavit signed by a police officer and deputy prosecuting attorney. The affidavit contains the following representations, none of which True disputes:

> Douglas True called 911 and informed the dispatcher that he needed to turn himself in because he had done something bad that he didn't remember. Officers arrived on scene and made contact with True outside his residence. True stated that his girlfriend was dead inside his residence. Officers obtained consent to search the residence and found Brianna Butler deceased in the bathroom. Butler's body had bruising on her arms and face and lacerations on her throat and torso consistent with knife wounds. Butler was approximately five to six months pregnant at the time of her death. The unborn child was also deceased. True was advised of his rights and gave a statement admitting that he and Butler got into an argument that escalated into a physical altercation. True stated that he was intoxicated and did not remember what happened after that. True stated that he did not know of anyone else in the residence other than a two year old child. True said that he got up in the middle of the night and found Butler's body in the bathroom and went back to the couch and passed out. True said that he got up the next morning and went to Lowe's to buy a tool to cut a cast off his arm. He said he later called his mother and told her that he had done something bad and he would never be getting out of prison. …

See Docket Entry 8, Exhibit E at CM/ECF 100. The cast was recovered and sent for testing. The results revealed that "[a] DNA profile consistent with originating from two individuals was obtained from [swabs of the cast]." See Docket Entry 8, Exhibit G at CM/ECF 2. The results revealed that the DNA profile from the victim was consistent with the "DNA profile of the major contributor obtained from [the swabs]." See Docket Entry 8, Exhibit G at CM/ECF 2. The minor component of the DNA profile obtained from the swabs was "inconclusive for comparative purposes due to the limited amount of DNA." See Docket Entry 8, Exhibit G at CM/ECF 2. The cast also tested positive for blood. See Docket Entry 8, Exhibit G at 6.

A knife was found next to the victim's body, see Docket Entry 8, Exhibit E at CM/ECF 9, and the knife was sent for testing. Although the knife tested positive for blood, see Docket Entry 8, Exhibit G at CM/ECF 6, the results noted the following with respect to the presence of fingerprints: "no latent prints containing sufficient unique characteristics to allow individualization to their source [were] observed." See Docket Entry 8, Exhibit G at CM/ECF 5.

True's claim that counsel erred by failing to discover and produce exculpatory evidence warrants no relief because True cannot satisfy the prejudice component of the Strickland v. Washington standard. Specifically, the evidence True relies upon, i.e., the results of testing done on the cast and knife and the absence of fingerprints, is not exculpatory and does not demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

True makes much of the fact that his DNA was not found on swabs of the cast. It is undisputed, though, that the cast was on one of his arms, and he did not cut the cast off until the day after the murders occurred. It is true that a definitive finding was not made as to the presence of his DNA on the cast, but the results of the testing also did not rule out the presence of his DNA on the cast. The results were simply inconclusive. Moreover, it is not insignificant that the victim's DNA was found on swabs of the cast.

With respect to the knife, it is true that testing did not reveal the presence of True's DNA. It does not appear, though, that the knife was tested for the presence of DNA. The knife was tested for fingerprints, and the results were inconclusive. The results did not reveal the presence of any fingerprints "containing sufficient unique characteristics to allow individualization to their source …"

True maintains that after he pleaded guilty, he learned that his fingerprints were never tested against those recovered from the crime scene. There was never any dispute, though, that he was in the residence at the time the victims were murdered. There is also no evidence that another person might have been in the residence at the time of the murders or might have committed the murders. When asked about that during the evidentiary hearing, True testified as follows:

> Q. That you did not commit these acts?
>
> A. I am not consciously—I can not honestly say if I did or didn't. I believe it could be possible, but it could just as well be not possible at the same time.
>
> Q. Pray tell who do you think committed these acts?
>
> A. Well, I later found out after my incarceration in the county jail that the [victim] was married, so I believe that that person could have possibly committed the offense.

See Docket Entry 8, Exhibit D at CM/ECF 149. His testimony is pure conjecture and supported by no facts whatsoever.

VI. TRUE'S FOURTH CLAIM. True's last claim also involves a challenge to his trial attorney's representation. True maintains that he did not enter a knowing, voluntary, and intelligent plea of guilty because he was denied his Sixth Amendment right to effective assistance of counsel. In support of the claim, True maintains that he was pressured by counsel into pleading guilty to avoid a sentence of death even though the State of Arkansas had not given formal notice of its intent to seek the death penalty. Moreover, True maintains that counsel prevented True from reviewing the evidence against him and was not aware of all the evidence until after he entered his guilty plea.

True's claim is governed by Strickland v. Washington. See Robinson v. Kelley, 2018 WL 1997797, 2 (E.D.Ark. 2018) (Ray, MJ), report and recommendation adopted, 2018 WL 1996464 (E.D.Ark. 2018) (Wilson, J.) (challenge to guilty plea on account of ineffective assistance of counsel governed by Strickland v. Washington).

> "'Surmounting Strickland [v. Washington's] high bar is never an easy task,' and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" Lee v. United States, 137 S. Ct. 1958, 1967 (2017) (citations omitted). A guilty plea and representations made by a defendant during plea-taking create a "strong presumption of verity" and pose "a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

See Id. at 3. Because the claim was considered and rejected by the state Supreme Court, the claim is also governed by 28 U.S.C. 2254(d), giving rise to a doubly deferential standard of review. See Id.

True testified during the evidentiary hearing about the circumstances surrounding his guilty plea. See Docket Entry 8, Exhibit D at CM/ECF 118-154. Although he admitted at the time of his plea that no threats or intimidation were made, he testified that he was only parroting the words of his attorney. True testified that counsel took advantage of True's "limited knowledge of the law at the time of the crime while [he] was awaiting trial." See Docket Entry 8, Exhibit D at CM/ECF 134. When asked to explain his answer, he stated the following:

> A. For one thing I already mentioned, not informing me that I was— could possibly, regardless of whether it was likely or not, be found guilty of a lesser offense and also to inform me that unless the death penalty was—that the death penalty actually had to be officially sought by the prosecuting team before it was actually being sought. I was under the assumption that it was being sought the whole time.

Q. By that you are referring to the fact that no Notice of Intent To Seek The Death Penalty had been filed in the five or so months since the crime had taken place?

A. Correct.

…

Q. You then say [counsel] opted for simple intimidation and coercion in obtaining your willingness to plead guilty.

A. Right.

Q. Explain to me what you mean.

A. By that, intimidating someone with the death—me namely with the death penalty, obviously that would be intimidation. And I do believe that [counsel] also stated—and this will be mentioned later in the petition actually—that it was his goal from the beginning for me to accept life without parole and he did specify from the beginning.

See Docket Entry 8, Exhibit D at CM/ECF 134-135. The state trial court applied the Strickland v. Washington standard and rejected the claim. On appeal, the state Supreme Court applied the same standard and found that counsel's performance was not deficient. The state Supreme Court so found for the following reasons:

True alleged below and argues on appeal that counsel was ineffective because he did not inform True that the prosecutor had not filed a notice of intent to seek the death penalty. However, True points to no authority that imposes an affirmative duty on a prosecutor to announce an intention to seek the death penalty. Rather, the prosecutor may, with the permission of the court, waive the death penalty. Ark. Code Ann. 5-4-608. Furthermore, Arkansas Code Annotated section 16-87-205 (Repl. 2005) states in pertinent part that in capital-murder cases, unless the prosecuting attorney informs the circuit court at the arraignment of the defendant that the death penalty will not be sought, it shall be presumed that the death penalty will be sought. Here, no evidence or testimony was introduced to establish that the death penalty had been waived by the prosecutor, and public defenders are required to presume the death penalty will be sought unless the prosecutor indicates otherwise. Ark. Code Ann. 16-87-205.

> In view of the above, trial counsel's advice that True faced a possible death sentence was not erroneous as the death penalty remained a potential outcome of any trial. … We have held that fear of the death penalty is a valid basis for a voluntary and intelligent plea of guilty, regardless of whether the plea results from the certainty or the probability of a lesser penalty. … Despite True's assertions that the prosecutor had not declared an intent to seek the death penalty and his additional allegations that he has no recollection of committing the crime, the circumstances surrounding the death of the victim and her unborn child support trial counsel's reasonable belief that True faced a potential death sentence. The trial court did not clearly err when it found that True's guilty plea was voluntarily and intelligently entered upon the advice of competent counsel. …

See True v. State, 532 S.W.3d at 75.

The state Supreme Court's adjudication of True's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The state Supreme Court recognized clearly established federal law as announced in Strickland v. Washington and found that counsel's performance was not deficient. The decision of the state Supreme Court reasonably applied the law and is consistent with it. The decision is also consistent with the presumption that counsel's conduct fell within the wide range of professionally reasonable assistance and sound trial strategy. The undersigned thus defers to the state Supreme Court's adjudication of the claim.

The state Supreme Court's adjudication of True's claim also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The adjudication rests on the first part of the Strickland v. Washington standard, i.e., whether counsel's performance was deficient, and the state Supreme Court could reasonably find that counsel's performance was not deficient. As the state Supreme Court noted, Arkansas law provides that in capital murder cases,

"unless the prosecuting attorney informs the circuit court at the arraignment of the defendant that the death penalty will not be sought, it shall be presumed that the death penalty will be sought." True produced no evidence that the death penalty had been waived, and the prosecution had given no indication that it would waive the death penalty. The undersigned therefore defers to the state Supreme Court's adjudication of the claim.

VII. RECOMMENDATION. For the reasons set forth above, the undersigned finds that True's claims warrant no relief. It is therefore recommended that his petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied.

DATED this 11th day of February, 2019.

_____
UNITED STATES MAGISTRATE JUDGE